UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA VANDERBOSSCHE,

    Plaintiff,　　　　　　　　　　　　　　　　　Civil Action No.
　　　　　　　　　　　　　　　　　　　　　　　　04-CV-73639-DT
vs.
　　　　　　　　　　　　　　　　　　　　　　　　HON. BERNARD A. FRIEDMAN
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER ACCEPTING AND ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on cross Motions for Summary Judgment. Magistrate Judge Mona Majzoub has submitted a Report and Recommendation ("R&R"), in which she recommends that the Court grant Defendant's Motion and deny Plaintiff's Motion. Plaintiff objects to the R&R. The Court reviews *de novo* those portions of the Magistrate Judge's R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Having made such a review, the Court shall accept and adopt the R&R.

**I.　HISTORY OF THE CASE**

    **A.　FACTUAL BACKGROUND**

On August 28, 2002, Lisa Vanderbossche ("Plaintiff") applied for social security disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1] (Pl.'s Mot. for

---

[1] Although both the Plaintiff's and Defendant's Motions for Summary Judgment, as well as several documents in the Transcript (Tr. 23, 54, 87), state that Plaintiff applied for DIB and SSI on August 28, 2002, those applications seem to be dated October 10, 2002. (Tr. 49, 165.) Whether

Summ. J., 2; Def.'s Mot. for Summ. J.; Tr. 49, 54, 165.)  She stated that she had been unable to work since August 1, 2002.  (Tr. 49, 165.)  She stated that her disabled condition was caused by diabetes, high blood pressure, and sleep apnea.  (Tr. 23, 37, 60, 168.)  She explained that she "just pass[es] out."[2]  (Tr. 67.)  On December 30, 2002, the Social Security Administration ("SSA") found that Plaintiff was not "disabled" under the SSA's rules and thus denied Plaintiff's claim.  (Tr. 37.)  Plaintiff appealed the denial and requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 42.)  By this time, she also claimed that she was further disabled and unable to work because of a herniated disc in her back.  (Tr. 24.)

An ALJ hearing was held on March 18, 2004.  (Tr. 22.)  On June 8, 2004, the ALJ issued an opinion denying both DIB and SSI to Plaintiff.  (Tr. 19, 22.)  She requested that the ALJ's decision be reviewed by the SSA's Appeals Council, but that request was denied.  (Tr. 5.)  Thus, the ALJ's ruling became the Commissioner's final decision.  (Tr. 5.)

At the time she originally applied for DIB and SSI, the five-foot-five Plaintiff was in her late 30s and weighed more than 200 pounds.[3]  Her recent work experience included time as a nursing assistant, cashier, sales clerk, and telemarketer.  (Tr. 23.)  She has an eighth-grade education.  (Tr.178.)

### B.    PROCEDURAL HISTORY

On October 4, 2004, Plaintiff filed a Complaint with this Court in order to appeal the ALJ's decision.  Both Plaintiff and Defendant filed Motions for Summary Judgment.  On

---

there is actually a difference in dates, or just a misstatement, is insignificant, as the discrepancy is irrelevant.

[2]In fact, Plaintiff was terminated from her nursing assistant job after she was found, for the second time, "sleeping on shift."  (Tr. 163.)

[3]Plaintiff's birth date is October 10, 1963.  (Tr. 176.)

September 29, 2005, Magistrate Judge Majzoub issued her R&R.  Plaintiff timely filed an Objection to the R&R.  Defendant made no filings in response to the R&R or to Plaintiff's Objection.

## II.     MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Magistrate Judge recommends that the Court deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.  (Mag.. J. R&R, 1.)  The issue before the Magistrate Judge was "whether the Commissioner's decision that the Plaintiff is not disabled was properly supported."  (Id.)  The Magistrate Judge recommends upholding the Commissioner's denial of benefits because she found the ALJ's decision was supported by substantial evidence.  (Id. at 6.)

Plaintiff, though, objects to the Magistrate Judge's R&R for several reasons.  First, Plaintiff argues that "the Magistrate Judge assigned inordinate weight to the evaluation of the consultative examiner [on April 18, 2003]."  (Pl.'s Objection to Mag. J. R&R, 3.)  Second, Plaintiff argues that the "Magistrate Judge's report does not mention the letter of Dr. Elfont dated February 27, 2004."  (Id. at 4.)  In that letter, Dr. Elfont stated that Plaintiff was unable to work. (Tr. 162.)  Third, Plaintiff argues that the "ALJ improperly assumed that the plaintiff's lack of medical treatment indicated that the allegations were not credible."  (Pl.'s Objection to Mag. J. R&R, 5.)  Lastly, Plaintiff argues that the Magistrate Judge improperly assumed that Plaintiff's "daily activity report" showed that she was not disabled because she was "able to do all housework" and "frequently visited friends and family members."  (Id. at 6.)

The Court has reviewed those portions of the Magistrate Judge's R&R to which the Plaintiff made its objections and the entire administrative record.  The Court is not persuaded by Plaintiff's objections.  Therefore, the Court shall accept and adopt the Magistrate Judge's R&R for

3

the following reasons.

### III.     ANALYSIS OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

When a court reviews the Commissioner of Social Security's ("Commissioner") denial of social security disability insurance benefits and supplemental security income, the court's role is limited under 42 U.S.C. § 405(g).  Section 405(g) states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive."  42 U.S.C. § 405(g) (West Supp. 2005) (emphasis added).  "Substantial evidence" is defined as "more than a mere scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Cutlip v. Sec'y of Health and Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).  Thus, this is a highly deferential standard, regardless of whether the ALJ has decided to grant or deny benefits.  See Baker v. Heckler, 730 F.2d 1147, 1150 (6th Cir. 1984) (stating "[t]he substantial-evidence standard allows considerable latitude to administrative decision makers").

A court cannot reverse an ALJ's decision unless it finds that the ALJ's decision was not based on substantial evidence.  See Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001) (stating that when a federal court reviews the ALJ's decision, "the only issue reviewable by this court is whether the decision is supported by substantial evidence").  Although a court must consider the entire record, Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985), the "findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion," Buxton, 246 F.3d at 772.  The substantial-evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."  Baker, 730 F.2d at 1150.  Further, the court may "not try

the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984).  Thus, so long as the "Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." Cutlip, 25 F.3d at 286.

Here, Plaintiff objects to the Magistrate Judge's recommendation that the ALJ's decision be affirmed.  In one of her objections, Plaintiff argues that "the Magistrate Judge assigned inordinate weight to the evaluation of the consultative examiner."  (Pl.'s Objection to Mag. J. R&R, 3.)  The consultative exam was conducted by Dr. L. Banerji, on April 18, 2003.  (Tr. 149-57.)  Dr. Banerji found that "[a]ll movements of the cervical [and lumbar] spine are normal and painfree."  (Tr. 151.)  He also observed: "The patient can walk tiptoe, on the heel and tandem gait.  Can squat and arise from squatting position.  The patient can get on and off the examination couch without difficulty.  Can get up from supine position without help."  (Tr. 151.)  At the examination, Plaintiff stated that "she can manage to do her housework without any short [sic] of breath."  (Tr. 149.)  Based on his examination, Dr. Banerji diagnosed Plaintiff as follows:

> 1. Diabetes mellitus.  As per history, it appears to be uncontrolled.
>    Exact status could not be determined in absence of blood sugar.
>    Clinically, there is no evidence of diabetic neuropathy,
>    retinopathy or nephropathy.
> 2. Hypertension.  It is well controlled with present regime.
> 3. Alleged history of sleep apnea.
> 4. Marked exogenous obesity.  No limitation of mobility or
>    activity from it.

(Tr. 151.)

Plaintiff claims, though, that more weight should have been given to the medical examinations conducted by Dr. Dayna Elfont, Plaintiff's primary-care physician.  On December 18,

5

2003, Dr. Elfont examined Plaintiff and found that although Plaintiff "has had some low back pain for years," the pain "worsened in [October 2003]." (Tr. 159.) Dr. Elfont stated that Plaintiff should only stand and walk for 15 minutes at a time and should only sit for two to four hours at a time. (Tr. 160.) Dr. Elfont indicated that Plaintiff can lift up to 10 pounds, as long as the lifting is only done occasionally. (Tr. 160.) Further, Dr. Elfont stated that Plaintiff is unable to work not only at her former job, but at any job at all. (Tr. 161.) Dr. Elfont based her conclusion on an MRI conducted on November 11, 2003. (Tr. 158.) The MRI showed that Plaintiff had "a compressive herniated disc", "compression of the subarachnoid space, acquired spinal stenosis and some degeneration of the disc space." (Tr. 158.)

Although Plaintiff may be in discomfort, the Court finds that the ALJ relied on substantial evidence when it determined that Plaintiff's level of discomfort did not rise to the level of a "disability." A person is considered "disabled" only "if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1527(a)(1). Plaintiff originally alleged that she was disabled due to diabetes, high blood pressure, and sleep apnea. (Tr. 23, 37, 60, 168.) Those conditions, though, become irrelevant because Plaintiff's own statement takes them off the table. At the ALJ Hearing, when Plaintiff was asked what problems were keeping her from working, Plaintiff replied: "It's just my back." (Tr. 203.) Moreover, the following exchange between the ALJ and Plaintiff's attorney further indicates that Plaintiff's back is the issue now:

> Attorney: Well, when the case was initially started here, I think the big problem was the narcolepsy. That has somewhat improved but—
> ALJ: And her biggest problem now is her back?
> Attorney: Is the back. It's gone from the one to the other.

(Tr. 186.)   The issue of disability now revolves solely around whether Plaintiff can be considered "disabled" based on the condition of her back.  Thus, the Court will focus on whether there was substantial evidence to find that Plaintiff's back did not rise to the level of a disability.

The Court finds that there is substantial evidence to support the ALJ's decision that Plaintiff is not disabled.  First, in response to the ALJ's hypothetical question about a person with the Plaintiff's limitations, the vocational expert explained that 40,000 unskilled sedentary jobs exist in Michigan.  (Tr. 221.)  These jobs include: "simple handle assembly, sorting and packaging[,] . . . lobby attendance, gate tenders in gated communities, bag checkers, [and] information clerks."  (Tr. 221.)

The vocational expert's evaluation is considered substantial evidence.  The Sixth Circuit has held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).  Here, the hypothetical was more than accurate in portraying the Plaintiff's physical condition.  Thus, the vocational expert's findings serve as substantial evidence to support the ALJ's decision that Plaintiff was able to find employment.

On the other hand, in her letter dated February 27, 2004, Dr. Elfont stated that Plaintiff is unable to work.  (Tr. 162.)  Dr. Elfont, though, admitted that Plaintiff should just "not be lifting at all over 10 pounds."  (Tr. 162.)  Dr. Elfont found Plaintiff to be able to lift objects up to 10 pounds, as long as only done occasionally.  (Tr. 160.)  In fact, at the ALJ Hearing, Plaintiff stated: "I can lift weight. . . . Comfortably about less than 10 pounds comfortably."  (Tr. 200.)   This limitation

7

was considered by the vocational expert when she determined whether any jobs would be available to Plaintiff. (Tr. 218.) The vocational expert found such jobs to exist. Thus, while a herniated disc may prevent Plaintiff from performing her former job, it does not necessarily preclude her from performing *all* jobs, as long as her limitations are recognized.

Moreover, the Code of Federal Regulations presents certain criteria that must be met in order to show that plaintiff's impairment meets sufficient medical severity to be considered a disability. 20 C.F.R. § 404.1520(a)(4)(iii). For spinal disorders, the Code states the following evidence must be shown:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1.04. Plaintiff's medical reports, while evidencing a few of the above elements, do not satisfy all of the requirements necessary to show an impairment of sufficient medical severity to be considered a disability. For instance, while Dr. Elfont's examination shows a "positive straight-leg raising test," there is no indication that this test was done for sitting and supine. Also, Dr. Elfont does not state that there is "motor loss."

In addition, the "inability to ambulate effectively" is not shown. Ineffective ambulation is

"an extreme limitation of the ability to walk." 20 C.F.R. Pt. 404, Subpt. P, App. 1.00B2b(1). The following are examples of "ineffective ambulation": "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Id.

Here, Plaintiff's testimony at the ALJ Hearing shows *effective*, not ineffective, ambulation:

> Q: How often do you use [a cane]?
> A: On my really bad days.
> Q: Um-hum. So you don't have to use it every day?
> A: No, not every day. But I can't walk that far without being in pain. (Tr. 204.)
> . . . .
> Q: [H]ow far can you walk at one time before you have to stop and rest?
> A: I would say about to the corner store. I have to sit down and rest, which is less than—see I live in a trailer park so less than four trailers away. And then I have to stop and sit. Get it together and I can get back up. (Tr. 208.)
> . . . .
> Q: [Can you] keep[] your back straight and bend[] at the knees?
> A: Yes, I can do—
> Q: You can do—
> A: that. (Tr. 212.)
> . . . .
> Q: [Could you walk up or down stairs] if you were to go slowly and hold onto a handrail[?]
> A: Not with a basket of clothes. No, sir.
> Q: Well—
> A: Or a bag of groceries.
> Q: —how about a potato?
> A: A potato? I'd be able to go down there but . . . getting back up it'd take me a while.
> Q: Okay. Any difficulty at all using your arms and hands?
> A: No. (Tr. 214.)

Plus, in a medical examination on April 18, 2003, Dr. Banerji found that Plaintiff "can stand without support" and that "[a]ll movements of the cervical spine are normal and painfree." (Tr.

151.) Dr. Banerji also found that "[a]ll movements of the lumbar spine are normal and painfree." (Tr. 151.) Thus, the Court finds that the medical reports in the record and ALJ Hearing testimony are substantial evidence that Plaintiff's impairment is not of a disabling severity, as considered under the Code of Federal Regulations.

When a disabling impairment cannot be shown by a plaintiff, the ALJ can "consider other factors, such as daily activities." <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997). Also, the Sixth Circuit has held that when the record shows "contradictions among the medical reports, claimant's testimony, and other evidence," then an "ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." <u>Walters</u>, 127 F.3d at 531-32. Here, the record shows that Plaintiff is able to successfully complete her daily activities and responsibilities. During the ALJ Hearing, Plaintiff testified as follows:

> Q: Are you able to look after all of your personal needs? Bathing and dressing and feeding yourself? Stuff like that?
> A: Yes, sir. I am but it takes me a while. And sometimes I do need help. (Tr. 204.)
> . . . .
> Q: Are you able to take care of any of the housework or the household chores?
> A: Yes, sir. (Tr. 204.)
> . . . .
> Q: You do your own cooking?
> A: Yes, sir. And I have to sit sometimes when I'm cooking.
> Q: Um-hum. Laundry, do you do that?
> A: Yes, I do my laundry but I don't carry it. (Tr. 205.)

The fact that Plaintiff may have some difficulty in accomplishing her daily activities, or that she accomplishes them more slowly than she did before, is not determinative of a disability. It does not prove a disability at all. In fact, Plaintiff's execution of her daily activities provide additional substantial evidence to support the ALJ's decision to deny benefits to Plaintiff.

Next, Plaintiff argues that the "Magistrate Judge's report does not mention the letter of Dr. Elfont dated February 27, 2004." (Pl.'s Objection to Mag. J. R&R, 4.) A magistrate judge, in arriving at a conclusion, is not required to list every single piece of evidence in the record. Here, the Magistrate Judge was surely aware of the letter, even though she did not specifically cite to it in her Report and Recommendation. On the third page of the ALJ's decision, the ALJ stated: "On February 27, 2004, Doctor Elfont opined that the claimant's combined symptoms precluded her from returning to gainful employment." (Tr. 24.) This shows that the ALJ's analysis included the letter. Thus, the Magistrate Judge, who read the ALJ report, was therefore aware of Dr. Elfont's letter, regardless of whether she went on to include it in her R&R or not.

Lastly, Plaintiff argues that the "ALJ improperly assumed that the plaintiff's lack of medical treatment indicated that the allegations were not credible." (Pl.'s Objection to Mag. J. R&R, 5.) Social Security Ruling 96-7P states that "an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain." Soc. Sec. Ruling 96-7P, 1996 WL 374186, *7 (S.S.A.). On the other hand, in a case where a plaintiff does not seek treatment, the ALJ must consider plaintiff's explanations for the failure to pursue treatment. Id. The Social Security Ruling lists several examples of possible explanations, one of which is: "The individual may be unable to afford treatment and may not have access to free or low-cost medical services." Id. at *8.

Here, Plaintiff stated that her doctor advised her to pursue physical therapy or back surgery, but Plaintiff claims that she did not seek either treatment because "they took away my insurance and I have no money." (Tr. 194.) While such an explanation "may provide insight" into Plaintiff's claims, Id. at *7, it is not necessarily determinative of the ALJ's decision. In fact, the ALJ may not

11

have found the explanation convincing in the first place. For instance, Plaintiff stated that she had "lost my insurance from November until the first part of January." (Tr. 194.) At the ALJ Hearing, held in mid-March 2004, Plaintiff admitted that she still had not yet called her insurance provider to see what treatments would be covered. (Tr. 202.) Thus, Plaintiff's statement is another piece of evidence that can support the ALJ's determination that Plaintiff does not suffer from a "disability."

In sum, the ALJ's denial of benefits is supported by substantial evidence. As long as this Court finds that substantial evidence exists in support of the ALJ's decision, then the ALJ's decision must stand. It does not matter whether this Court would have come to a different decision in this matter had it been in the shoes of the ALJ, or whether substantial evidence exists to support an opposite decision. In this case, the ALJ relied upon substantial evidence, as shown in the record, to support his decision to deny benefits to Plaintiff. With this finding, the Court's review comes to a close.

### IV.     CONCLUSIONS

Based upon the record established and documentary evidence presented, the Magistrate Judge was correct in recommending that Defendant's Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied. For the reasons stated above, the Court accepts and adopts the Magistrate Judge's recommendations. Accordingly,

IT IS ORDERED that the Magistrate Judge's Report and Recommendation of September 29, 2005, is accepted and adopted insofar as it is consistent with the rulings indicated above.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is denied.

```
                                        ___s/Bernard A. Friedman_____
                                        BERNARD A. FRIEDMAN
                                        CHIEF UNITED STATES DISTRICT JUDGE
```

Dated:   March 24, 2006
         Detroit, Michigan

**I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.**

**_____/s/ Patricia Foster Hommel_____
         Patricia Foster Hommel
      Secretary to Chief Judge Friedman**

13